UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>MANUEL EDWIN MARTINEZ,<br>    Defendant. | Case No. 2:22-cr-00135-GMN-NJK<br>**Report and Recommendation**<br>[Docket No. 43] |

Pending before the Court is Defendant's motion to dismiss the indictment under *Bruen*. Docket No. 43. The Court has considered Defendant's motion, the United States' response, and Defendant's reply. Docket Nos. 43, 48, 51. For the reasons more fully discussed below, the undersigned **RECOMMENDS** that Defendant's motion be **DENIED**.

**I.    BACKGROUND**

On June 14, 2022, a grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Docket No. 1. Defendant has sustained prior felony convictions. *Id*.

Defendant filed the instant motion seeking to dismiss the charge in the indictment as violative of the Second Amendment. Docket No. 43. He bases his motion on the Supreme Court decision, *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022), as well as the Ninth Circuit decisions *Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) and *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023). *Id*. at 2. Defendant submits that *Bruen* "rewrote the rules for determining whether a firearm law satisfies the Second Amendment." *Id*. at 4. Specifically, Defendant submits, *Bruen* ended the means-end step of the analysis and "tinkered with the first history-and-tradition step." *Id*. He submits that the analysis under *Bruen* is a straightforward one-step history and tradition

analysis – if the United States "cannot 'identify an American tradition' justifying a firearms restriction, the law fails." *Id*. (citing *Bruen*, 142 S.Ct. at 2138). Defendant further submits that *Teter* and *Baird* demonstrate that *Bruen* now requires the Court to review the plain text of the Second Amendment to determine if it clearly covers the regulated conduct and, if it does, the prosecution is "presumptively unconstitutional – salvageable only if the government carries its 'demanding burden of proving a comparable historical tradition of firearms regulation." Id. at 6 (citing *Baird*, 81 F.4th at 1046).

Defendant submits that, under the *Bruen* test, the indictment against him is unconstitutional. Docket No. 43 at 10. First, Defendant submits, the Second Amendment's plain text protects his conduct. *Id*. at 10-13. Defendant submits that people who have prior felony convictions are "still people" who fall under the protection of the Second Amendment. *Id*. at 13. Second, Defendant submits that the United States cannot establish the requisite historical analogues for 18 U.S.C. §922(g)(1) and, therefore, the statute is unconstitutional. *Id*. at 14-16. Therefore, Defendant asks the Court to dismiss the indictment against him. *Id*. at 16.

In response, the United States submits that the plain text of the Second Amendment does not protect the possession of firearms by felons. Docket No. 48 at 5. The United States cites to Supreme Court case law that states that the prohibition of firearms is a longstanding regulatory measure. *Id*. Further, the United States cites to the majority opinion in Bruen that "repeatedly" stated that the Second Amendment's protection is limited to lawful purposes by law-abiding citizens. *Id*. at 6 (including multiple citations to *Bruen*). Additionally, the United States notes the concurrence of Chief Justice Roberts and Justice Kavanaugh in Bruen, wherein they state that longstanding prohibitions on the possession of firearms by felons are constitutional. *Id*. at 5. See also *Bruen*, 142 S.Ct. at 2162.

The United States submits that the Ninth Circuit has rejected the type of challenge to 922(g)(1) that Defendant now brings. *Id*. at 7. The United States cites to *United States v. Vongxay*, 594 F.3d 1111, 1115, 1118 (9th Cir. 2010) (§ 922(g)(1) does not violate the Second Amendment as it apples to … a convicted felon," because "felons are categorically different from the individuals who have a fundamental right to bear arms") and *United States v. Phillips*, 827 F.3d

2

1171, 1174-75 (9th Cir. 2016) (rejecting felon's Second Amendment challenge to § 922(g)(1) conviction). The United States submits that, despite Defendant's claim that *Bruen* abrogated all prior cases on this issue, *Vongxay* in fact remains controlling law and can be applied consistently with *Bruen*. Docket No. 43 at 7-9. The United States submits that Defendant has failed to demonstrate that his conduct is covered by the plain text of the Second Amendment and that his motion fails on that ground alone. *Id*. at 10. The United States submits that, in any event, § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. *Id*. at 10-14. Therefore, the United States asks the Court to deny Defendant's motion. *Id*. at 15.

In reply, Defendant submits that *Vongxay* was abrogated by *Bruen*. Docket No. 51 at 2-4. Defendant submits that *Teter* and *Baird* confirm that *Vongxay* is no longer good law. *Id*. at 4-6. Defendant further submits that the plain text of the Second Amendment applies to felons. *Id*. at 6-8. Additionally, Defendant submits that the United States asks the Court to apply an incorrect analysis and that no historical precedent justifies § 922(g)(1). *Id*. at 8-15. Therefore, Defendant asks the Court to dismiss the indictment. *Id*. at 15.

## II. DISCUSSION

### A. Evidentiary Hearing

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).

The Court will not hold a hearing on a defendant's pre-trial motion "merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at 933). The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended*

3

*by* 609 F.2d 433 (1979).  In the instant case, Defendant did not request an evidentiary hearing and, in any event, the moving papers fail to "allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist."  *Howell*, 231 F.3d at 620.  The Court will therefore decide the motion on the moving and responsive papers.

### B.  The *Bruen* Standard

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court concluded that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."  *See also McDonald v. City of Chicago*, 561 U.S. 742, 749 (2010) (holding post-*Heller* "that the Second Amendment right is fully applicable to the States").  After *Heller*, courts almost uniformly adopted a two-step approach to evaluate Second Amendment challenges to firearms regulations.  *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (collecting cases applying the two-step approach).

In applying that two-step approach, courts first determined whether "the challenged law affects conduct that is protected by the Second Amendment."  *Id.* (internal citation omitted).  Courts "base[d] that determination on the historical understanding of the scope of the right."  *Id.* (internal quotation marks omitted).  If, based on the historical evidence, the regulation affected conduct outside the scope of the Second Amendment, then the analysis would stop.  *Id.*  If the regulation was found to burden conduct within the scope of the Second Amendment, courts would then move to step two.  *Id.* at 784 (citation omitted).

Step two required courts first to determine the necessary level of scrutiny to be used in evaluating the regulation.  *Id.*  If a regulation affected the "core Second Amendment right" of the defense of the home, courts would apply strict scrutiny.  *Bruen*, 142 S.Ct. at 2126.  All other firearms regulations were evaluated using an intermediate scrutiny test.  *Id.*  Intermediate scrutiny was also "appropriate when text and history [were] unclear in attempting to delineate the scope of the right."  *Id.* at 2127.

"Despite the popularity of this two-step approach," the Supreme Court found in *Bruen* that "it [was] one step too many." *Id.* Instead, the Court held that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. For a firearms regulation addressing conduct within the plain text of the Second Amendment to be constitutional, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Proving consistency with this Nation's historical tradition of firearm regulation depends on the nature of the subject regulation. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. Attempts by earlier generations to regulate a problem by materially different means or attempts by similar means that were struck down on constitutionality grounds, are also probative of a regulation's constitutionality. *Id.* When a regulation addresses a distinctly modern problem, courts must instead use analogical reasoning. *Id.* at 2132. "[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* (quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). This "relevantly similar" inquiry, in turn, requires courts to consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* It is only after the government has proven consistency with the Nation's tradition of firearm regulation, either through showing the regulation is distinctly similar to a historical regulation or by analogical reasoning, that courts may "conclude that [an] individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)).

. . . .

C. Analysis

After the parties briefed the instant motion, the Ninth Circuit issued *United States v. Perez-Garcia*, ___ F.4 th ___ 2024 WL 1151665 (9th Cir. March 18, 2024). In that case, the Circuit confirmed that "[t]he Supreme Court has repeatedly emphasized … that 'the right secured by the Second Amendment is not unlimited.'" *Id.*, 2024 WL 1151665, at *7 (quoting *Heller*, 554 U.S. at 626 and citing *Bruen*, 142 S.Ct. at 2111; *McDonald*, 561 U.S. at 786). The Court further found that legislatures may regulate who may possess a weapon at all and that the Supreme Court has recognized "a historical tradition of disarming individuals who are not 'law-abiding responsible citizens." *Id.*, citing *Heller*, 554 U.S. at 635. The Court found that, in *Bruen*, the Supreme Court "again reaffirmed *Heller*'s and *McDonald*'s holding that the Second Amendment protects 'the right of an ordinary law-abiding citizen to possess a handgun in the home'" as well as the right for an ordinary law-abiding citizen to carry a handgun publicly for self-defense. *Id.* (quoting *Bruen*, 142 S.Ct. 2111). The Court noted that, under *Bruen*, a court must first consider whether the Second Amendment's plain text covers an individual's proposed course of conduct. *Id.* at 8. If so, the Second Amendment "presumptively protects that conduct" and the United States must then justify the challenged regulation by "showing that it is consistent with our nation's 'historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 142 S.Ct. 2111).

The Ninth Circuit caselaw therefore compels this Court to find that the plain text of the Second Amendment does not cover Defendant. Defendant has clearly been convicted of felonies in the past, as demonstrated by the indictment. As such, he is not an ordinary law-abiding citizen. Since *Bruen*, *Heller*, and *McDonald* have held that the plain text of the Second Amendment applies to ordinary law-abiding citizens, and *Perez-Garcia* reaffirms that principle within this Circuit, the Court finds that the plain text of the Second Amendment does not apply to Defendant and the analysis ends.

In any event, even if the plain text of the Second Amendment did apply to Defendant, the Court would still find the statute constitutional. In *Heller* the Supreme Court wrote "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on

6

the possession of firearms by felons…." 554 U.S. at 626. Although the Supreme Court qualified its statement that such "longstanding regulations" are only "presumptively lawful," 554 U.S. at 627 n.26, when the Court reiterated this point in *McDonald*, it used no such qualifying language. *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons'").

The Ninth Circuit considers *Heller's* endorsement of felon in possession laws to be binding. *Vongxay*, 594 F.3d at 1115. In reaching that conclusion, the Court observed that "[c]ourts often limit the scope of their holdings, and such limitations are integral to those holdings. Indeed, [l]egal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling." *Id.* (internal quotation omitted).

Defendant submits that *Vongxay* was overruled by *Bruen,* as demonstrated by *Teter* and *Baird,* and is no longer good law. Docket No. 51 at 2-6. The Ninth Circuit has "recognized that circuit precedent, authoritative at the time that it issued, can be effectively overruled by subsequent Supreme Court decisions that are closely on point, even though those decisions do not expressly overrule the prior circuit precedent." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (internal quotations and citation omitted). A case is effectively overruled when the higher court "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 900. "[T]he clearly irreconcilable requirement is a high standard." *FTC v. Consumer Defense, LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (quoting *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013)). "Although [courts] should consider the intervening authority's reasoning and analysis, as long as [a court] can apply our prior circuit precedent without running afoul of the intervening authority, [it] must do so." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoting *United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012)).

Defendant submits that *Vongxay* is bad law because "it held without historical analysis that individuals with felony convictions could be divested of their right to own firearms" and that any prior cases that did not employ the historical analysis test are "clearly irreconcilable" with the "new *Bruen* history-and-tradition test." Docket No. 51 at 2. As Defendant observes, *Vongxay*

relies on caselaw that has since been abrogated by subsequent Supreme Court opinions. *See Vongxay*, 594 F.3d at 1114-18. *Vongxay* does allude to the historical underpinnings of 18 U.S.C. § 922(g)(1). *Id.* at 1116-18. However, it does not conduct the type of in-depth historical analysis done in *Heller* and *Bruen*. *Compare Vongxay*, 594 F.3d at 1116-18 with *Bruen*, 142 S.Ct. at 2138-56 and *Heller*, 554 U.S. at 600-03, 605-16. Nowhere does *Vongxay* consider whether "the [challenged] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. As has been noted, "there are good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans of firearm possession by *all* felons." *United States v. Phillips*, 827 F.3d 1171, 1174 & n.2 (9th Cir. 2016) (emphasis in original) (quotation omitted). *See also Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) (conducting a historical analysis of 18 U.S.C. § 922(g)(1) and concluding it is unconstitutional). "Admittedly, there is some tension between the Supreme Court's holding in" *Bruen* and the Ninth Circuit's holding in *Vongxay*. *Consumer Defense*, 926 F.3d at 1213. The Ninth Circuit, however, has "clarified that it is not enough for there to be some tension between the intervening higher authority and prior circuit precedent." *Id.*

       The Justices' statements in *Bruen* itself confirm that it is not "clearly irreconcilable" with *Vongxay*. In his concurrence, Justice Alito noted that nothing in *Bruen* "disturbed anything that [the Supreme Court] said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S.Ct. at 2157 (Alito, J., concurring). Similarly, Justice Kavanaugh, joined by Chief Justice Roberts, "underscore[d]" that "the Second Amendment allows a variety of gun regulations," and that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 2161-62 (Kavanaugh, J., concurring) (cleaned up) (quoting *Heller*, 554 U.S. at 626, 636)). Even Justice Breyer's dissent, joined by Justices Sotomayor and Kagan, "under[stood] the Court's opinion … to cast no doubt on [the] aspect of *Heller's* holding" regarding the validity of felon-in-possession laws. *Id.* at 2189 (Breyer, J., dissenting).

       To the extent that the above-referenced statements are non-controlling *dicta*, "Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court

might hold," and courts can "not blandly shrug them off because they were not a holding." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992) (Noonan, J., concurring and dissenting)).  Put simply, "when the Court speaks, [lower courts] should take notice." *Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1067 (9th Cir. 2020) (internal citation omitted).  Five sitting Supreme Court justices have indicated that felon in possession laws are constitutional, even after the new mode of analysis announced in *Bruen*.  Considering these pronouncements by a majority of the Supreme Court, the Court cannot conclude that *Vongxay* is "clearly irreconcilable" with *Bruen*.  *Vongxay's* holding, therefore, remains good law and 18 U.S.C. § 922(g)(1) remains constitutional.

This result is consistent with the conclusions of other courts in this District. *See, e.g., United States v. Adame-Lopez*, -- F.Supp.3d ---, 2024 WL 343442, at *4 (D. Nev. Jan. 30, 2024) ("laws criminalizing firearm possession by individuals with felony convictions such as § 922(g)(1) pass both prongs of Bruen's new test"); *United States v. Gamble*, -- F.Supp.3d ---, 2023 WL 6460665, at *5 (D. Nev. Oct. 4, 2023) ("Vongxay remains controlling law and binds me to conclude that § 922(g)(1) and [defendant]'s prosecution under that statute are constitutional"); *United States v. Martinez*, 2023 WL 3687726, at *3 (D. Nev. May 22, 2023) ("the prohibition on the possession of firearms by felons found in Section 922(g)(1) does not violate the Second Amendment").

This result is also consistent with other courts that have considered the constitutionality of 18 U.S.C. § 922(g)(1) post-*Bruen*.  *See, e.g., United States v. Young*, 639 F.Supp.3d 515 (W.D.Pa. 2022); *United States v. Butts*, 637 F.Supp.3d 1134 (D.Mont. 2022);  *United States v. Charles*, 633 F.Supp.3d 874 (W.D.Tex. 2022); *United States v. Collette*, 630 F.Supp.3d 841 (W.D.Tex. 2022).  *See also United States v. Coleman*, 2023 WL 122401 (N.D.W. Va. Jan. 6, 2023); *United States v. Siddoway*, 2022 WL 4482739 (D. Idaho Sep. 27, 2022); *United States v. Gray*, 2022 WL 16855696 (D. Col. Nov. 10, 2022).

## III. CONCLUSION

For the reasons more fully discussed above, **IT IS RECOMMENDED** that Defendant's motion to dismiss the indictment be **DENIED.**  Docket No. 43.

Dated: March 27, 2024.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).