UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>vs.<br><br>MANUEL EDWIN MARTINEZ,<br><br>　　　　　Defendant. | Case No. 2:22-cr-00135-GMN-NJK<br><br>REPORT AND RECOMMENDATION<br><br>(Docket No. 37) |

This matter was referred to the undersigned Magistrate Judge on Defendant Manuel Edwin Martinez's motion to suppress statements. Docket No. 37. The Court has considered Defendant's motion and exhibits, the United States' response, Defendant's reply, and the evidence and arguments presented at an evidentiary hearing held before the Court. Docket Nos. 37, 47, 50, 80, 81.

### I. TESTIMONY OF DETECTIVE MENDOZA

Las Vegas Metropolitan Police Department ("LVMPD") Detective Scott Mendoza has been assigned permanently to the Force Investigation Team ("FIT") in Las Vegas, Nevada since 2018. Hearing Tr. (6/20/2024) at 12:51 p.m. – 12:52 p.m.[1] FIT conducts the criminal investigation involving an LVMPD officer's use of deadly force and any other events that result in death or serious bodily injury. Hearing Tr. (6/20/2024) at 12:52 p.m.

---

[1] Citations to the recording of the hearing are noted by "Hearing Tr." followed by the relevant date and time of the hearing.

On January 12, 2022, Detective Mendoza became aware of an officer-involved shooting that had occurred that evening and proceeded to the location where the incident occurred. Hearing Tr. (6/20/2024) at 12:53 p.m. – 12:54 p.m. Upon his arrival, Detective Mendoza was given a briefing from the officers who were involved in the shooting. Hearing Tr. (6/20/2024) at 12:54 p.m. After the briefing, Detective Mendoza left the scene because of a duty that he had the next day. Hearing Tr. (6/20/2024) at 12:54 p.m.

On January 14, 2022, Detective Mendoza and his partner Detective Valenzuela interviewed Defendant at the Clark County Detention Center ("CCDC"). Hearing Tr. (6/20/2024) at 12:55 p.m., 1:12 p.m. Prior to Detective Mendoza speaking to Defendant, Detective Valenzuela went into the room with a search warrant and took a buccal swab of Defendant. Hearing Tr. (6/20/2024) at 1:05 p.m. – 1:10 p.m. Defendant had some reservations at first about the search warrant and said he would be more comfortable with an attorney. Hearing Tr. (6/20/2024) at 1:20 p.m. – 1:21 p.m. Defendant was told that the buccal swab was ordered by the court, and he needed to comply. Hearing Tr. (6/20/2024) at 1:22 p.m.

Prior to the interview, Detective Mendoza was aware that an officer-involved shooting had occurred and that Defendant had been shot. Hearing Tr. (6/20/2024) at 1:20 p.m. Since Defendant had been injured on January 12, 2022, he had been in the hospital and had just been admitted to CCDC, which is why the detective and his partner went there on that date for the interview. Hearing Tr. (6/20/2024) at 12:55 p.m., 1:19 p.m. Defendant walked to the interview room escorted by an officer and did not seem to be in any pain. Hearing Tr. (6/20/2024) at 12:55 p.m. Detective Mendoza had an empty holster on his right side throughout the interview. Hearing Tr. (6/20/2024) at 1:20 p.m.

During the interview, Defendant seemed coherent, asked "a lot" of questions, and seemed very engaged in the conversation. Hearing Tr. (6/20/2024) at 12:55 p.m. – 12:56 p.m. Detective Mendoza told Defendant he was giving him the opportunity to give his version of events, but "if you choose not to, you choose not to." Hearing Tr. (6/20/2024) at 1:01 p.m. Defendant then started asking about the charges and the search warrant, but Detective Mendoza told him that, before they discussed anything, he needed to read him his *Miranda* rights, which he read off a card. Hearing Tr. (6/20/2024) at 12:56 p.m., 1:01 p.m. – 1:02 p.m., 1:21 p.m.

Detective Mendoza read these rights off a card:

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to consult with an attorney before questioning. You have the right to the presence of an attorney during questioning. And if you cannot afford an attorney, one will be appointed for you before questioning. Do you understand your rights?

Hearing Tr. (6/20/2024) at 1:01 – 1:02 p.m., 1:12 p.m. – 1:13 p.m.

When Defendant initially responded by slightly nodding his head and saying something that sounded like "yeah," Detective Mendoza could not clearly understand him because the interview took place during Covid and all three people in the room were wearing masks. Hearing Tr. (6/20/2024) at 12:56 p.m., 1:02 p.m., 1:22 p.m., 1:24 p.m. As a result, Detective Mendoza asked Defendant "is that a yes?" and Defendant said it was, while nodding again. Hearing Tr. (6/20/2024) at 12:56 p.m., 1:02 p.m., 1:13 p.m., 1:24 p.m. Detective Mendoza told Defendant several times that it was up to him whether he wanted to speak about the incident and that, if he chose not to speak, he did not have to. Hearing Tr. (6/20/2024) at 1:01 – 1:02 p.m., 1:12 – 1:13 p.m., 1:15 p.m., 1:17 p.m. Detective Mendoza found that Defendant was very engaged in the conversation and asked several questions, especially in the beginning of the interview. Hearing

Tr. (6/20/2024) at 1:17 p.m. – 1:18 p.m.  At the end of the interview, Defendant requested an attorney and, at that point, all questions ceased.  Hearing Tr. (6/20/2024) at 1:18 p.m., 1:21 p.m.

The interview room at CCDC is audio and video recorded and Detective Valenzuela additionally recorded the audio of the interview on a separate device.  Hearing Tr. (6/20/2024) at 12:56 p.m. – 12:57 p.m., 1:03 p.m.  A transcript of the audio recording was produced.  Hearing Tr. (6/20/2024) at 1:03 p.m.

## II.     ANALYSIS

### A.     Credibility of Witness

The Court ordered an evidentiary hearing in order to make an accurate determination of what occurred in the instant case and how the facts relate to the applicable caselaw.  "The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes.  Rather, live testimony is the bedrock of the search for truth in our judicial system." *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012).  "[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity - or lack thereof."  *Oshodi v. Holder*, 729 F.3d 883, 892 (9th Cir. 2013) (internal citation omitted).  *See also United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (evidentiary hearing required where defendant demonstrates that a significant disputed factual issue exists); *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility").

During the evidentiary hearing in this matter, the Court had the opportunity to listen to the testimony of the witness, to observe and evaluate his demeanor while testifying, and to weigh his credibility. Having done so, the Court finds that Detective Mendoza testified credibly.

### B. Motion to Suppress

Defendant asks the Court to suppress the statement he gave to Detectives Mendoza and Valenzuela. Docket No. 37. Specifically, Defendant submits that, as he was in custody while interrogated, the officers were required to give him his *Miranda* warnings. *Id*. at 4. Defendant further submits that no evidence exists that he knowingly and voluntarily waived his rights, only that he stated he understood them. *Id*. at 4-5. Defendant submits that, in any event, his statement was coerced because he had been shot by police. *Id*. at 5-12. Defendant submits that the violence of the shooting was not ameliorated and, therefore, his statement was *per se* involuntary. *Id*. at 12. Therefore, Defendant asks the Court to suppress his statement. *Id*. at 13.

In response, the United States submits that Defendant waived his *Miranda* rights and voluntarily gave his statement. Docket No. 47. Specifically, the United States submits that a valid waiver of Miranda rights depends on the totality of the circumstances and that the Court can also look to the perspective of the officer taking the statement. *Id*. at 8. The United States submits that Defendant specifically stated that he understood his rights, never claimed he did not, and engaged in conversation with the detectives after his rights were read to him. *Id*.

In reply, Defendant submits that the United States has not met its heavy burden of demonstrating that he knowingly and intelligently waived his rights. Docket No. 50 at 4, 9-10. Defendant further submits that the United States failed to respond to his *per se* involuntary argument regarding the shooting and, therefore, the United States did not contest this argument. *Id*. at 10.

### 1. *Miranda* Standards

Law enforcement personnel who wish to question individuals in their custody must first afford them certain procedural rights. The most salient of these rights are the so-called "*Miranda* warnings" – prior to questioning, an officer must tell a suspect "that he has the right to remain silent and also the right to the presence of an attorney." *Robertson v. Pichon*, 849 F.3d 1173, 1183 (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). These warnings are designed to protect a person's Fifth Amendment privilege against compelled self-incrimination. The Supreme Court has reasoned that the privilege is protected when a person is adequately and effectively advised of his rights. *See id.*; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "In order to combat [the pressures inherent in custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights." *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) (quoting *Miranda*, 384 U.S. at 467).

*Miranda* warnings are only required when the person being questioned is subjected to custodial interrogation. *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). The Court examines the totality of the circumstances when determining whether an individual was in custody. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The test is whether "a reasonable innocent person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave." *United States v. Bassignani*, 575 F.3d 879, 883-84 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 121, 1235 (9th Cir. 1981)). This requires the Court to assess the objective circumstances of the interrogation. *Stansbury v. California*, 511 U.S. 318, 323 (1994). The subjective views of either the suspect or the interrogating officer is not relevant to the custody determination. *Id.* The Ninth

Circuit has identified five factors relevant to the custody determination: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002).

*Miranda* warnings function both to reduce the risk that an involuntary or coerced statement will be admitted at trial and to implement the Fifth Amendment's self-incrimination clause. *Williams*, 435 F.3d at 1151. Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him. *Id.* at 1152. In determining whether a suspect was in custody, "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

Interrogation under *Miranda* consists of any words or actions on the part of law enforcement officers that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Williams*, 842 F.3d 1143, 1146-47 (9th Cir. 2016). Generally, questions about routine background biological information such as identity or age do not constitute interrogation. *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (citing *United States v. Perez*, 776 F.2d 799 (9th Cir. 1985)). *See also Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Whether words or actions are likely to elicit an incriminating response is determined primarily by looking to the perceptions of the suspect being questioned. *Id.* at 600-01 (citing *Illinois v. Perkins*, 496 U.S. 292 (1990)). However, the Court can consider "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form

of persuasion" to determine what the police should have known when acting or speaking. *Rhode Island v. Innis*, 446 U.S. 291, 302 n. 8 (1980).

A suspect's *Miranda* right – whether to counsel or to remain silent - must be invoked "unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). Even if a person did not specifically invoke his right to remain silent, an accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the person "in fact knowingly and voluntarily waived *[Miranda]* rights" when making the statement. *State of North Carolina v. Butler,* 441 U.S., 369, 373 (1979). The waiver inquiry "has two distinct dimensions;" waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis*, 560 U.S. at 382–83 (internal citation omitted). Therefore, "after giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived his or her *Miranda* rights. On these premises, it follows the police were not required to obtain a waiver of [Defendant's] *Miranda* rights before commencing the interrogation." *Id.* at 388.

Here, Defendant clearly was in custody and he was clearly being interrogated. Therefore, the detectives were required to give him *Miranda* warnings, which they did. The Court further finds that the warnings were sufficient and that, in examining the totality of the circumstances, including Defendant's acknowledgement of his *Miranda* rights, failure to unambiguously invoke his right to remain silent, and his eagerness to speak with the detectives, the Court finds that Defendant's waiver of his *Miranda* rights was knowing and voluntary and his statement was voluntary as far as his waiver of *Miranda* rights was concerned.

### 2. *Per Se* Involuntariness

Defendant's involuntariness argument does not rely solely on whether his statement was voluntary under *Miranda* and its progeny. Defendant also submits that his statement was involuntary due to physical coercion, i.e., the police shooting. Docket No. 37 at 5-12. The United States fails to respond to this argument in any way. *See* Docket No. 47.

"The failure of an opposing party to include points and authorities in response to any motion constitutes a consent to granting the motion." LCR 47-3. By failing to respond to this argument, then, the United States has consented to it. Accordingly, the Court finds that Defendant's statement was *per se* involuntary. *See also Springer v. U.S. Bank National Association*, 2016 WL 5661929, at * 3 (D.Nev. 2016) (party that did not even acknowledge argument in response to motion concedes it under local rules).

### III.  RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS RECOMMENDED that Defendant's motion to suppress his statement, Docket No. 37, be **GRANTED**.

DATED: July 17, 2024.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

### NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and

recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).