UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br>vs.<br><br>MANUEL EDWIN MARTINEZ,<br><br>             Defendant. | Case No.: 2:22-cr-00135-GMN-NJK<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Nancy J. Koppe, (ECF No. 82), recommending that Defendant's Motion to Suppress, (ECF No. 39), be denied. Defendant timely filed an Objection to the R&R. (Obj., ECF No. 87). Plaintiff timely filed a Response. (Obj. Resp., ECF No. 89). For the reasons discussed below, the Court **ADOPTS** the conclusion of the Report and Recommendation and **DENIES** the Motion to Suppress.

I.   <u>**BACKGROUND**</u>

On June 14, 2022, an Indictment was entered charging Defendant with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Indictment, ECF No. 1). The Indictment was issued following Defendant's arrest during an encounter between Defendant and the Las Vegas Metropolitan Police Department at a gas station. The Court incorporates by reference the background section articulated by Magistrate Judge Koppe in the R&R, (ECF No. 82). The Court acknowledges, however, that the Parties dispute one major fact: whether Defendant pointed a firearm at Officer Lee and Officer Falldorf.

The Government maintains that a vehicle pulled into the gas station where the officers were refueling their patrol vehicle when a female driver quickly pulled into the station and

abruptly jumped out of her vehicle. (6/20/2024 Hr'g at 11:48 a.m., 12:18 p.m., ECF No. 91). Officer Lee noticed that her face was pale, her eyes looked like saucers, and she mouthed, "Help me." (*Id.*). When Officer Lee opened the door to his vehicle, he heard the female say, "I need help." (*Id.* at 11:48 a.m., 11:58 a.m., 12:18 p.m.). Officer Lee thought the woman looked terrified. (*Id.* at 12:18 p.m.). Officer Lee determined the woman was not a threat. (*Id.* at 11:49). Officer Lee maintains that Defendant, in the passenger seat of the parked vehicle, reached into a black bag, drew out a firearm, and pointed it at Officer Lee. (6/20/2024 Hr'g at 11:50 a.m., 12:22 p.m., 12:44 p.m., ECF No. 91). Officer Lee further maintains that when Defendant exited the vehicle, he pointed the gun at both Officer Lee and Officer Falldorf. (*Id.* at 11:54 a.m., 12:01 p.m., 12:30 p.m.). Officer Lee saw Defendant climb into the patrol vehicle and stated over the radio that he had done so—he thought that Defendant might be driving away in the patrol vehicle or using some of the weapons that were in the patrol vehicle. (*Id.* at 12:02 p.m., 12:03 p.m.–12:04 p.m.). The officers maintain that Defendant exited the patrol vehicle and stood up on the front bumper before running into the desert area near the train tracks away from the officers. (*Id.* at 10:25 a.m., 10:47 a.m.–10:49 a.m.). Defendant's firearm was later found inside the patrol vehicle that he had climbed into leading the officers to believe that Defendant had placed the firearm inside before fleeing the scene on foot. (Mot. Suppress Resp. 4:4–8, ECF No. 47).

However, the Defendant argues that he was inside the parked vehicle going through his duffle bag when he "realized his windshield had been hit—repeatedly—by bullets" which he assumed were fired by police officers. (Mot. Suppress 3:3–10, ECF No. 39). He maintains that he did not step out of the vehicle and point a gun at the officers. (Mot. Suppress Reply 3:3–4 ECF No. 50).

In his Motion to Suppress, Defendant asks the Court to exclude the firearm because (1) the police lacked probable cause to seize (shoot) him, and (2) any relinquishment of the firearm

was not abandonment but was instead involuntary due to officers wrongfully engaging in said seizure. (Mot. Suppress 2:6–9); (Obj. 8:20–25).  Following an evidentiary hearing, the Magistrate Judge recommended that this Court deny Defendant's Motion to Suppress. Magistrate Judge Koppe found that both Officer Falldorf and Offer Lee testified credibly at the evidentiary hearing. (R&R 12:5–8, ECF No. 82).  Moreover, Magistrate Judge Koppe also found that the officer's actions constituted a seizure, and that the seizure was not a display of excessive force, therefore making the seizure reasonable. (*Id.* 14:19–20, 15:16–22).  Lastly, Magistrate Judge Koppe found that Defendant abandoned the gun when he placed it inside the patrol vehicle and then left the patrol vehicle without attempting to reenter it. (*Id.* 17:12–13).

## II. <u>LEGAL STANDARD</u>

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2.  Upon the filing of such objections, the Court must make a *de novo* determination of those portions to which objections are made. *Id.*  The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. R. IB 3-2(b).

## III. <u>DISCUSSION</u>

Defendant objects to the R&R on four grounds.  First, he argues that Magistrate Judge Koppe incorrectly held that Officer Falldorf was a credible witness. (Obj. 5:1, ECF No. 87). Second, he argues that the firearm is fruit of the poisonous tree. (*Id.* 6:11–12).  Third, he argues that Magistrate Judge Koppe should have focused on the probable cause needed to conduct a lawful seizure, instead of whether the force was excessive. (*Id.* 7:15–17).  And fourth, that he did not abandon the firearm. (*Id.* 8:20).  The Court begins with whether Office Falldorf is credible.

### A. Whether Officer Falldorf is Credible

The Court finds that Officer Falldorf is credible. "The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes. Rather, live testimony is the bedrock of the search for truth in our judicial system." *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012). "[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity—or lack thereof." *Oshodi v. Holder*, 729 F.3d 883, 892 (9th Cir. 2013) (internal citation omitted). Indeed, "there can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility." *See United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995).

The relevant section of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), allows a magistrate judge to conduct an evidentiary hearing on a motion to suppress and make recommendations to a district judge. The statute then allows for a party to "file written objections to such proposed findings and recommendations. . . ." *Thoms*, 684 F.3d at 899. To be clear, "the statute calls for a *de novo* determination, not a *de novo* hearing."[1] *United States v. Raddatz,* 447 U.S. 667, 674 (1980). "Since the magistrate sees and hears the evidence, the district court is entitled to rely upon his recommendations when making its decision on the motion." *United States v. Bergera*, 512 F.2d 391, 394 (9th Cir. 1975).

Defendant argues that "this Court should decline to find Officer Falldorf credible," because "he completely disregard[ed]" the report conducted by the Force Investigation Team ("FIT") following the incident which found no evidence that Defendant fired his weapon that day. (Obj. 5:2–12). Despite the FIT Report findings, Officer Falldorf maintained that

---

[1] A *de novo* evidentiary hearing is required under certain circumstances that are not present in the case before the Court. *See generally United States v. Thoms*, 684 F.3d 893 (9th Cir. 2012).

1  Defendant shot his firearm. (*Id.*).  The Magistrate Judge heard testimony from Officer Falldorf
2  at the evidentiary hearing and determined that he was credible. (R&R 12:5–8).  This Court
3  listened to a recording of the evidentiary hearing and found no reason to disagree with the
4  Magistrate Judge's determination.  Further, because the Court believes that live testimony is the
5  bedrock of the search for truth in our judicial system and because the Court is entitled to rely
6  upon the Magistrate Judge's recommendations, the Court finds that Officer Falldorf is credible.

   **B.     Whether Defendant has Standing**

8  To have Fourth Amendment standing to "contest the legality of a search or seizure, the
9  defendant must establish that he had a 'legitimate expectation of privacy' in the place searched
10 or in the property seized." *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986) (citation
11 omitted).  It is the defendant's burden to establish standing. *United States v. Singleton*, 987 F.2d
12 1444, 1449 (9th Cir. 1993).  "A defendant who voluntarily abandons property has no standing
13 to contest its search and seizure." *United States v. Stephens*, 206 F.3d 914, 917 (citing *United
14 States v. Garcia*, 909 F.2d 389, 391 (9th Cir. 1990)).  Abandonment is ultimately a question of
15 intent and may be inferred from words, acts, and other objective facts. *United States v. Kendall*,
16 655 F.2d 199, 201 (9th Cir. 1981) (quoting *United States v. Jackson*, 544 F.2d 407, 409 (9th
17 Cir. 1976)).  "[T]wo important factors [in demonstrating abandonment] are denial of ownership
18 and physical relinquishment of the property." *United States v. Nordling*, 804 F.2d 1466, 1469
19 (9th Cir. 1986).  "[A]n abandonment that results from a Fourth Amendment violation cannot be
20 voluntary." *Stephens*, 206 F.3d at 917 (citations omitted).  The Government has the burden of
21 establishing abandonment. *United States v. Fernandez*, 772 F.2d 495, 499 (9th Cir. 1985).

22 The Government argues that the gun was not seized from the Defendant, but instead it
23 was abandoned by him when he discarded it in the patrol vehicle before fleeing the scene.
24 (Mot. Suppress Resp. 11:1–2).  The Government relies on *California v. Hodari D.,* where the
25 Supreme Court held that the defendant was not seized until he was tackled by the officer and

thus the cocaine abandoned while he was running from the officer was not fruit of a seizure. 499 U.S. 621, 629 (1991).  The Government also relies on *U.S. v. McClendon*, where the Ninth Circuit found that a handgun discarded by defendant after he was told he was under arrest, but before he was tackled by police, was not fruit of a seizure. 713 F.3d 1211, 1214 (9th Cir. 2013).

     Defendant contends that he did not abandon the firearm because (1) he did not have the required express intent to abandon, and (2) because there can be no voluntary abandonment when there is an illegal seizure. (Obj. 8:21–25).  The Court finds merit in Defendant's former argument that he lacked the requisite express intent to abandon the firearm.  Mere relinquishment of property is not alone sufficient to establish abandonment.  There must also be something more, like for instance denying ownership of the property. *United States v. Baker*, 58 F.4th 1109, 1118 (9th Cir. 2023); *Nordling*, 804 F.2d at 1469; *Jackson*, 544 F.2d at 409; *Kendall*, 655 F.2d at 201.  Here, Defendant climbed into the patrol vehicle, placed his firearm inside, exited the patrol vehicle, stood on the bumper of the vehicle, and then fled the scene.  At no point did Defendant disavow ownership of the firearm in the present case, nor is it apparent from the facts that Defendant placed the firearm inside the vehicle to avoid its detection.  Moreover, the Court is unconvinced that Defendant exclusively relinquished his property.  Defendant maintains that he placed the firearm inside the patrol vehicle so that police would stop shooting him, not because he intended to voluntarily abandon the firearm in the vehicle.  (Reply 8:14–18).  The Court is persuaded by this argument and finds that the Government has not met its burden of establishing abandonment.  The Court thus determines that Defendant did not abandon the firearm and as such has standing to contest its search and seizure.

     The Court now addresses Defendant's latter argument that there can be no voluntary abandonment when there is an illegal seizure.  It is true that the Parties dispute how long the seizure lasted.  The Magistrate Judge recommends, and the Government agrees, that "the use of force when the officers shot at Defendant constituted a seizure" and "the seizure of Defendant

lasted only while the shooting occurred" and then again when Defendant was arrested after he had run to a fence, hopped over the fence, and ran away toward the train tracks. (R&R 14:19, 16:8–9). Defendant, on the other hand, argues that the seizure lasted even when a break from the shooting occurred while Defendant placed his weapon in the patrol vehicle. (Obj. 6:16–22). For the reasons discussed in more detail below, this Court finds that probable cause existed to seize Defendant and the firearm. Thus, even assuming arguendo[2] that the seizure continued while Defendant placed his weapon in the patrol vehicle, Defendant's argument that he did not abandon his firearm because an illegal seizure occurred, still fails.

        **C.**     **Whether Probable Cause Existed to Seize Defendant**

Because the Court finds that Defendant has standing to contest the seizure of the firearm because it was not abandoned, it must now address whether probable cause existed for Defendant to be seized. To begin, neither party disputes that a seizure occurred when the officers shot at Defendant.[3] (Obj. 6:13–15); (Obj. Resp. 1:18–23, ECF No. 90). But Defendant argues that the Magistrate Judge "focused on the wrong issue" when she determined that "the officers' actions were reasonable and the force was not excessive." (Obj. 7:15–22). Defendant avers that the Magistrate Judge should have instead determined whether there was probable cause to seize Defendant. (*Id.* 7:23–8:1).

Indeed, excessive force is not at issue in the present motion, instead whether to suppress evidence of the firearm is. Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. Const. amend. IV. "Searches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the

---

[2] The Court need not determine how long the seizure lasted.
[3] Parties do, however, dispute how long the seizure lasted. (R&R 14:19, 16:8–9); (Obj. Resp. 3:12–13, ECF No. 90); (Obj. 6:16–22).

1   exclusionary rule." *United States v. McClendon, 713 F.3d* 1211, 1215 (9th Cir. 2013).

2   Police officers must have probable cause to seize someone by gunfire so as not to violate
3   the Fourth Amendment. Probable cause exists when evidence is sufficient "to lead a person of
4   reasonable caution to believe that an offense has been or is being committed by the person
5   being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (internal citation
6   omitted). "The probable-cause standard is incapable of precise definition or quantification into
7   percentages because it deals with probabilities and depends on the totality of the
8   circumstances." *Rodis v. City, County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009)
9   (internal citation omitted). "If the suspect threatens the officer with a weapon or there is
10  probable cause to believe that he has committed a crime involving the infliction or threatened
11  infliction of serious physical harm, deadly force may be used if necessary to prevent escape,
12  and if, where feasible, some warning has been given." *Tennessee v. Garner*, 471 U.S. 1, 11
13  (1985).

14  Defendant argues that the officers did not have probable cause to seize him. (Obj. 8:3).
15  On the other hand, the Government argues that the officers had probable cause to believe
16  Defendant posed a threat of serious physical harm based on the female driver's actions and
17  demeanor and the fact that both officers saw a gun in Defendant's hand. (Mot. Suppress Resp.
18  10:4–12, ECF No. 47). The Government submits that both officers believed that they and the
19  female driver were in mortal danger, and that their mistaken belief that Defendant fired at them
20  is of "no practical or legal import." (*Id*. 10:9–12). Based on the totality of the circumstances,
21  Officer Falldorf and Officer Lee had probable cause to seize Defendant with the use of their
22  weapons. Defendant need not actually fire his gun for probable cause to exist; the events
23  leading up to the shooting, coupled with Defendant threatening the officers with a weapon, is
24  sufficient. *Garner*, 471 U.S. at 11. Thus, the Court finds that probable cause existed to seize
25  Defendant. And because the Court finds that there was probable cause to seize Defendant, it

need not determine whether the gun was "fruit of the poisonous tree," because the seizure did not offend the Fourth Amendment.

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that the conclusion of the Report and Recommendation, (ECF No. 82), is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress, (ECF No. 39) is **DENIED**.

Dated this   21   day of October, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court